```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KLINGER ORDONEZ,

                    Plaintiff,                               **MEMORANDUM AND ORDER**

       -against-

LOVELACE, INC.,                                              02-CV-6193 (DLI) (WDW)

                    Defendant,
-----------------------------------------------------------x
LOVELACE, INC.,

                    Third-Party Plaintiff,

       -against-

CEDAR DESIGN, INC. and NEWBRIDGE
COVERAGE CORP.,

                    Third-Party Defendants.
-----------------------------------------------------------x
```

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Klinger Ordonez brings this diversity action against Lovelace, Inc. ("Lovelace"), a general contractor, alleging common law negligence and violations of N.Y. Labor Law. Ordonez alleges that defendant's failure to provide the proper protective equipment was a proximate cause of his fall and resulting injuries. Lovelace, in turn, has filed a third-party complaint against Cedar Design, Inc. ("Cedar Design"), a subcontractor and Plaintiff's employer, for Cedar Design's failure to obtain liability insurance coverage as required by an agreement between Lovelace and Cedar Design. Lovelace has also named Newbridge Coverage Corp. ("Newbridge"), its insurance broker, as a Third-Party Defendant for the negligent breach of its contractual and fiduciary duties for allegedly misrepresenting Lovelace's insurance coverage. In its answer to the third-party complaint, Cedar Design asserts a cross-claim for breach of contract and negligence against Newbridge.

Presently before the court is Plaintiff's motion for summary judgment, pursuant to Fed. R.

Civ. P. 56, solely on the issue of liability under N.Y. Labor Law § 240 (1). Separately, Third-Party Defendant Newbridge moves for summary judgment against Lovelace and Cedar Design. For the reasons set forth below, Plaintiff's motion for summary judgment on the issue of liability is granted. Third-Party Defendant Newbridge's summary judgment motion against Lovelace is denied; however, its motion against Cedar Design is granted.

**Background**

*The Accident*

In early 2002, Lovelace, a general contractor, was hired by the owners of 77 Hasley Lane, Watermill, New York (the "Premises") to renovate a three-story house.[1] (Lovelace Dep. 5, 11.) Eric Lovelace is the sole owner, officer, and employee of Lovelace, Inc. (*Id.* at 4–5.) As the general contractor, Lovelace oversaw and managed the renovation and retained Cedar Design to install new roofing and siding on the Premises. (*Id.* at 12, 16.) At all relevant times, Plaintiff was an employee of Cedar Design.

On August 15, 2002, the day of the accident, Plaintiff was affixing shingles to the Premises. The "scaffolding" upon which he was standing consisted of a wooden plank measuring ten feet long and two feet wide. (Villata Aff. ¶ 4.) The ends of this wooden plank each rested on extension ladders. Plaintiff checked the ladders to make sure they were secure. (Ordonez Dep. 19.) At the time of the accident, Plaintiff was working at a height of about twenty feet. (Villata Aff. ¶ 4.)

Immediately before the accident, Plaintiff was hammering when suddenly "everything fell down." (Ordonez Dep. 15.) No harnesses, lanyards, pulleys, or ropes were provided or available at the site, nor were such safety devices expressly required. (*Id.* at 19; Villata Aff. at ¶ 5; Lovelace Dep. 74.)

---

[1] The owners of the Premises are not a party to this action. (Pl.'s Rule 56 Mot. Ex. 4, ¶ 8(D).)

Luis Villata, a co-worker, did not witness the accident since he was working on another part of the Premises. However, after hearing a crashing sound, Villata went to where Ordonez had been working and saw Plaintiff lying on the ground. The extension ladders and the board upon which Plaintiff had been standing were also on the ground nearby. (Villata Aff. ¶ 4.) When Villata returned from the hospital to the job site, the board and ladders had been removed and neither he nor Plaintiff could state whether the wooden plank had snapped or whether the ladders had failed. (Ordonez Dep. 17.) Villata corroborates Ordonez's testimony that no scaffolds, mechanical lifts, safety harnesses or safety lines were available at the job site. (Villata Aff. at ¶ 5.)

Defendant Lovelace admits that it never addressed job site safety with the employees of Cedar Design, or any other subcontractors for that matter, and also admits that Lovelace did not require the use of any safety devices on the job site. (Lovelace Dep. 73–74.)[2]

*The Insurance Negotiations*

Upon securing the contract to renovate the Premises, Lovelace contacted Edward Palace, an insurance broker at Newbridge, to obtain insurance coverage for the project. (Lovelace Dep. 28.) Eric Lovelace alleges that he requested insurance coverage in the amount of two million dollars, stating that he needed coverage "from head to toe." (Id. at 28.) Eric Lovelace also alleges that he specified his company's need for insurance to cover "subcontractors on the job." (*Id.* at 53, 71.) Newbridge procured an insurance policy for Lovelace from the Essex Insurance Company and contacted Eric Lovelace, who expressed surprise at the cost of the insurance premium. Palace allegedly explained that the insurance premium was expensive because "once in a while you have

---

[2] T. Haynia, testifying on behalf of Cedar Design, Inc., indicated that, although larger wooden planks were available to use as scaffolding, such scaffolding and other safety equipment would have to have beeen procured from Cedar Design's warehouse. These items were not available at the job site. Additionally, Cedar Design did not explicitly require or provide instruction regarding the use of any safety equipment that may have been available in its warehouse. (Haynia Dep. 58–59.)

3

a subcontractor or somebody on the job if they got hurt this would cover them." (Lovelace Dep. 53:4–5.)

After the accident, Essex Insurance Company denied Lovelace coverage citing a provision in the insurance policy excluding subcontractors from coverage. (Lesser Decl. ¶ 4, 10; Ex. D.) Defendant Lovelace did not bring suit against Essex Insurance Company and does not contend that the Essex Insurance Company improperly denied its claim for coverage. However, Lovelace contends that because it specifically requested liability insurance coverage for sub-contractors and relied on Newbridge to procure such coverage, Newbridge is now liable.

Newbridge claims that because Lovelace did not specifically request general liability insurance coverage for subcontractors, it owed Lovelace no more than the common law duty to obtain the insurance coverage that Lovelace requested. Further, Newbridge argues that Lovelace is presumed to have knowledge of the terms of its insurance coverage and therefore cannot now claim that it detrimentally relied on Newbridge's alleged misrepresentation.

## Discussion

*Standard of Review*

Summary judgment will be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, there

exists a dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991).

*Choice of Law*

Because the instant suit is based on diversity jurisdiction, the court must apply the choice of law analysis of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003). The instant case is brought in New York and venued in the Eastern District of New York. None of the parties dispute that New York's choice-of-law rules apply.

If "conduct regulating rules" are at issue, as they are here, New York law applies the law of the place of the tort. *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999). New York was the site of the accident, and thus New York law applies to Plaintiff Ordonez's claims.

With respect to Lovelace's claims against Newbridge alleging breaches of fiduciary and contractual duties, New York law considers "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties." *GlobalNet Financial.Com, Inc. v. Frank Crystal Co., Inc*., 449 F.3d 377, 383 (*citing In re Allstate Ins. Co., (Stolarz)*, 81 N.Y.2d 219. 227, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993)). Here, Newbridge procured and negotiated Lovelace's insurance agreement in New York. Lovelace is a New York corporation, and Newbridge is a New York State licensed insurance agency. Therefore, New York law applies to these claims as well.

*Labor Law Claim*

Invoking New York Labor Law § 240, Plaintiff Ordonez maintains that Lovelace is liable because there were no safety devices available at the job site and the absence of such devices was the proximate cause of his injuries.

New York Labor Law § 240 provides, in pertinent part:

> *All contractors and owners and their agents* . . . who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure *shall furnish or erect, or cause to be furnished or erected* for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

Labor Law § 240(1) (emphasis added).

As the New York Court of Appeals has noted, § 240(1) "place[s] the onus directly on the employer, and it . . . creat[es] a presumption of employer liability when a scaffold (or ladder) collapses." *Blake v. Neighborhood Hous. Servcs.*, 1 N.Y.3d 280, 285 (2003).

In the instant case, Lovelace admitted that it never addressed job site safety with any of its subcontractors, nor did it provide any safety equipment at the job site.[3] Instead, Lovelace depended on its subcontractors to furnish the necessary safety devices and safety training. However, § 240(1) draws no distinction between a general contractor and a subcontractor/employer: "[O]wners or contractors not actually involved in construction can be held liable, regardless of whether they exercise supervision or control over the work." *Id.* at 287. "The objective . . . is to force owners and contractors to provide a safe workplace, under pain of damages." *Id.* at 286.

Further, "the availability of a particular safety device will not shield an owner or general contractor from absolute liability if the device alone is not sufficient to provide safety without the

---

[3] Q: Who would be in charge of safety procedures at the construction site?
A: It was my understanding subcontractors were responsible for their own safety and supplying their own equipment for their own safety.
(Lovelace Dep. 19.)

use of additional precautionary devices or measures." *Conway v. State of New York Teachers' Ret. Sys.*, 141 A.D.2d 957, 958–59, 530 N.Y.S.2d 300 (3d Dep't 1988) (citations omitted). Here, plaintiff was provided with two ladders and wooden planks. Neither Lovelace nor Cedar Designs provided scaffolding, hoists, stays, slings, hangers, blocks, pulleys, braces, irons, or ropes or any other safety devices. Therefore, Lovelace is presumptively liable under § 240(1) given the accident and the complete absence of any safety devices. *See* N.Y. Labor Law § 240(1); *Blake*, 1 N.Y.3d at 285.

Relying on *Blake*, *supra*, Lovelace argues that the instant motion for partial summary judgment should be denied because a jury could determine that plaintiff's own actions were the sole proximate cause of his injuries. "[W]here a plaintiff's own actions are the sole proximate cause of the accident, there can be no liability." *Cahill v. Triborough Bridge and Tunnel Auth.*, 4 N.Y.3d 35, 38 (2004). However, *Cahill* is easily distinguishable. There, the employer, the Triborough Bridge and Tunnel Authority ("the Authority"), made man lifts and safety lines available at the work site. The Authority gave frequent safety talks that included instruction in the use of man lifts and safety lines. Plaintiff chose not to use the safety lines in spite of the Authority's specific requirements to do so. Reversing a lower court's grant of summary judgment on the issue of liability under § 240(1), the New York Court of Appeals held that a jury could have found "that [plaintiff's] own conduct, rather than any violation of Labor Law § 240 (1), was the sole proximate cause of his accident." *Cahill*, 4 N.Y.3d at 40.

Here, a jury cannot find that there were adequate safety devices available since there were none on site. Further, the plaintiff submitted proof that he was engaged in the alteration of a building and that he fell from an elevated work site thereby creating the presumption of employer liability. *See* N.Y. Labor Law § 240(1); *Blake*, 1 N.Y.3d at 285. In response, neither Lovelace nor Cedar Design submitted evidence showing a triable issue of fact. Plaintiff's proofs are unrebutted

and the contention that Plaintiff might have been the sole proximate cause of his injuries is mere speculation insufficient to defeat the instant motion for partial summary judgement.

Defendant Lovelace's remaining contention, that the subcontractors did not have permission to work on the job site on the day of the accident, is without merit. There is no evidence in the record to suggest that had Lovelace granted permission, safety devices would have suddenly materialized. *See, e.g., Stolt v. Gen. Foods Corp.*, 81 N.Y.2d 918 (1993) (plaintiff's motion for summary judgment on liability properly granted where there was an absence of safety devices on job site and plaintiff used broken ladder despite being instructed not to).

Accordingly, Plaintiff Ordonez's motion for partial summary judgment on the issue of liability under N.Y. Labor Law § 240(1) is granted.

*Negligent Misrepresentation*

Defendant Lovelace maintains that it detrimentally relied on Newbridge's representation that its subcontractors were insured under the policy for the project. In New York, generally, an insurance broker "owes the insured no more than the common-law duty to procure the insurance coverage that the insured requests." *GlobalNet Financial.Com, Inc.*, 449 F.3d at 383 (*citing Murphy v. Kuhn*, 90 N.Y.2d 266, 269--70, 660 N.Y.S.2d 371, 682 N.E.2d 972 (1997)). Thus the issue is whether Lovelace has demonstrated the existence of a triable issue of fact to support its contention that Newbridge breached its common-law duty of procuring the insurance coverage requested by Lovelace.

Lovelace claims that it requested insurance coverage from "head to toe" and that it possibly specifically requested insurance coverage for its subcontractors. Moreover, Lovelace also alleges that when Eric Lovelace expressed surprise at the cost of the insurance premium, Edward Palace, Newbridge's agent, explained that the cost was high because the insurance policy covered

subcontractors. These alleged facts demonstrate that Lovelace has presented the existence of a triable issue of fact sufficient to defeat a motion for summary judgment.

Newbridge correctly notes that lower New York courts have held that receipt of an insurance policy constitutes presumptive knowledge of its terms. However, the same courts have created an exception to this general rule where, as here, an insurance agent may have failed to correct a misimpression or affirmatively misrepresented the scope of the insurance coverage. *See, e.g., Glick Truck Sales, Inc., v. Spadaccia-Ryan-Haas, Inc.*, 290 A.D.2d 780, 782 (3d Dep't 2002) (and cases cited therein).

Finally, Newbridge argues that its motion for summary judgment should be granted because Eric Lovelace endorsed an "Exclusion of Coverage" ("Exclusion") explicitly stating that subcontractors were not within the scope of the insurance policy. Although Newbridge attaches this Exclusion, a single sheet of paper, as an exhibit, it never identifies the document to which this exclusion pertains. (Ex. E). Nor is the document referenced by Essex Insurance Co. in its letter disclaiming coverage. (Ex. D.) Indeed the endorsement, dated January 3, 2002, predates the effective dates of the Essex insurance policy. (Ex. K.) Upon this record, and given that "[a] court must resolve all ambiguities, and draw all inferences, against the moving party," *Anderson*, 477 U.S. at 248, the court hereby denies Newbridge's motion for summary judgment against Lovelace.

*Cedar Design's Cross-Claim*

In its answer to the Third Party Complaint, Cedar Design asserts a cross-claim based upon negligent misrepresentation and breach of contact against Newbridge. (Third Party Answer ¶8.) Under New York law, recovery against an insurance broker may be allowed under theories of breach of contract and negligence. *See, e.g., Chase Scientific Research, Inc. v. NIA Group, Inc.*, 96 N.Y.2d 20, 725 N.Y.S.2d 592, 749 N.E.2d 161 (2001). However, in recognizing such causes of action, the

9

New York Court of Appeals has made it clear that these theories of liability arise from an alleged failure "to procure adequate insurance coverage. Such a failure would arise from the original contract for brokerage services entered into by the insured plaintiffs and the defendant brokers." *GlobalNet Financial.Com*, 449 F.3d at 387.

In the instant case, Cedar Design was not a party to the "original contract" for insurance and thus can establish neither that it was in privity of contract with Newbridge nor that Newbridge owed it a duty of care. *See Id.* Accordingly, Newbridge's motion for summary judgment on Cedar Design's claims is granted.

**Conclusion**

Plaintiff's motion for partial summary judgment based on N.Y. Labor Law § 240(1) on the issue of liability is granted. Third-Party Defendant Newbridge's motion for summary judgment against Third-Party Plaintiff Lovelace is denied. However, Newbridge's summary judgment motion against Cedar Design is granted and the cross-claim by Cedar Design is dismissed. This matter is referred to the magistrate judge for further pretrial proceedings.

SO ORDERED


DATED:   Brooklyn, New York
         February 12, 2007


/s/_____
DORA L. IRIZARRY
United States District Judge